NICHOLAS J. MINDEN, et al.,      )
     )
       Plaintiffs,      )
     )      Case No. 4:11CV01284 AGF
       v.      )
     )
ATAIN SPECIALTY INSURANCE CO.      )
f/k/a USF INSURANCE CO.,      )
     )
       Defendant.      )

## MEMORANDUM AND ORDER

This diversity action for a determination of insurance coverage under general commercial liability policy ("GCL") is before the Court on the motion (Doc. No. 56) of Defendant Atain Specialty Insurance Co., formerly known as USF Insurance Co., for summary judgment, and the cross motion (Doc. No. 69) of Plaintiffs for partial summary judgment. For the reasons set forth below, the Court concludes that Defendant ("USF") had a duty to defend and indemnify its insured, but that its failure to do so was not vexatious. Accordingly, USF's motion shall be denied in part and granted in part, and Plaintiffs' motion shall be granted.

## BACKGROUND

On the evening of April 4, 2009, Curtis Lammert and Decedent Daniel M. Minden, Sr., attended a party at a tavern owned and operated by The Gannon Parker and Wooten Company ("Gannon"). Lammert and Decedent were not previously acquainted, and neither was employed by Gannon. Decedent left the tavern at closing time through

the rear entrance/exit, and as he was walking in Gannon's adjacent main parking lot to get to the supplemental parking lot where he had parked, he was struck and run over by a pickup truck driven by Lammert, whereupon Lammert left the scene. Police were summoned, and an ambulance took Decedent to the hospital.

According to the police investigative report, witnesses, including a police officer who was at the bar, told the investigating officers that shortly before Decedent was hit, Lammert and Decedent had an argument in the parking lot, and that Lammert turned the wheels of his pickup towards where Decedent was standing in the well-lit parking lot, accelerated his vehicle when Decedent was standing in its path, hit him, and then ran him over. (Doc. No. 61-6.) Lammert turned himself into the police the next morning. According to the investigative report, Lammert initially denied hitting anyone with his vehicle. He later admitted to it, but stated that he did not do it "on purpose." Additionally, Lammert's passenger at the time of the incident told police that she did not see anyone in the pickup truck's path before Decedent was hit and that after the incident, Lammert repeatedly stated that he did not intend to hit Decedent. *Id.*

On April 6, 2009, Lammert was charged with assault in the second degree and leaving the scene of an accident. As a result of injuries sustained in the incident, Decedent died on May 16, 2009. Plaintiffs in the present action are the children of Decedent. By letter to Gannon dated June 23, 2009, counsel representing Plaintiffs suggested that Lammert was visibly intoxicated at the time of the incident, that the configuration of Gannon's parking lots was unreasonably dangerous and directly led to Decedent's death, and that Gannon should direct its liability carrier to contact counsel.

(Doc. No. 71-4.)

The assault and battery charge against Lammert was changed to involuntary manslaughter in the first degree for recklessly causing Decedent's death, in violation of Missouri Revised Statue §565.024. (Doc. No. 61-15.) On July 8, 2010, Lammert pled guilty to both charges against him – involuntary manslaughter and leaving the scene. At the plea hearing, the prosecuting attorney stated that witnesses reported that Decedent was clearly in Lammert's vehicle's path. Lammert stated that he thought Decedent was clear of the vehicle. (Doc. No. 61-18 at 6.)

After Lammert's criminal conviction, Plaintiffs filed suit in state court against Lammert for negligently/recklessly causing Decedent's death, and in a separate count, for intentionally causing Decedent's death; and against Decedent's automobile insurance carrier, for uninsured motorist benefits. In the same suit, they brought three counts against Gannon, for (1) negligence in not having a safe pathway from the bar's rear entrance/exit for patrons walking to the supplemental parking lot, so that these patrons had to walk in the "travel portion" of the main parking lot to get to the supplemental lot; (2) dram shop liability in that Gannon employees continued to serve Lammert intoxicating beverages after he was visibly intoxicated; and (3) premises liability for the unreasonably dangerous design of the rear entrance/exit of the bar and main parking lot in that it did not have a safe pathway for patrons who had parked in the supplemental lot. (Doc. No. 57-27.)

When the incident occurred, Gannon was insured under a GCL policy issued by USF for $1 million per occurrence. Upon service in the state court action against it,

Gannon made a demand upon Defendant for defense and indemnification. By letter dated September 2, 2009, USF denied Gannon's demand, referring Plaintiffs to the coverage language of the policy, as well as to a liquor liability exclusion, an auto exclusion, and an assault and battery exclusion. The letter noted that USF was in possession of the state court complaint filed by Plaintiffs, the June 3, 2009 letter to Gannon from Plaintiffs' attorney, and the police report indicating that assault charges were filed in connection with the incident. (Doc. No. 71-23.)

By letter from Gannon's defense counsel dated September 28, 2010, USF was notified of a mediation to take place on October 13, 2010, in the underlying litigation; USF declined to attend or otherwise participate. Gannon's liquor liability insurance carrier notified USF that in light of USF's refusal to defend Gannon despite the premises liability claims in the underlying suit, Gannon remained free to pursue those remedies provided by Missouri Revised Statute §537.065.[1]

---

[1]   This section provides in relevant part as follows:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract.

Following the mediation, Plaintiffs settled their claim against Decedent's automobile liability insurer for $200,000, and dismissed their claims against Lammert. Plaintiffs and Gannon entered into a Release and Settlement for an undisclosed amount with respect to Plaintiffs' negligence and dram shop claims against Gannon. As part of the consideration for the Release and Settlement, Gannon (1) assigned to Plaintiffs its right in a "bad faith" claim against USF arising out of USF's failure to defend or indemnify Gannon, and (2) agreed not to contest the premises liability claim against it, and agreed to allow for the entry of a consent judgment against it on that claim for an amount to be determined by the court after a hearing. (Doc. No. 66-8.) Thereafter, the state court entered judgment on the pleadings in favor of Plaintiffs on their premises liability claim against Gannon in the amount of $2 million.

The present action was brought by Plaintiffs as assignees of Gannon. Plaintiffs claim that USF's refusal to defend and indemnify Gannon in their premises liability claim was in breach of the insurance contract between Gannon and USF. Plaintiffs seek equitable garnishment in the amount of the USF policy limit of $1 million (Count I), and damages for breach of contract and statutory vexatious refusal to pay under Missouri Revised Statutes § 375.420, in the amount of $2 million (Count II).[2]

As more fully set forth below, in support of its motion for summary judgment and in opposition to Plaintiffs' cross motion for summary judgment on Count I, USF argues

---

[2]   By Memorandum and Order dated May 22, 2012, this Court granted USF's motion to dismiss Count III of Plaintiffs' complaint, which alleged bad faith refusal to defend and settle Plaintiffs' claims against Gannon, based on Missouri law that a claim of bad faith refusal to settle cannot be assigned. (Doc. No. 47.)

that Plaintiffs' claims fail as a matter of law because the above-noted auto exclusion and assault and battery exclusion each bar coverage. In opposition to USF's motion for summary judgment and in support of their cross motion for summary judgment on Count I, Plaintiffs argue that USF had a contractual duty to defend and indemnify Gannon with respect to the premises liability claim and related judgment against Gannon. Plaintiffs argue that neither of the exclusions relied upon by USF bar coverage, and that resolution of Count II requires the determination of factual matters by a jury.

**The Policy** (Doc. No. 71-7)

The coverage section of the USF policy in question provides in relevant part as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY . . . LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

* * *

b. This insurance applies to "bodily injury" . . . only if:

(1) the "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory";

The policy limited coverage for each occurrence to $1 million. The policy included the following auto exclusion:

* * *

**g. . . . Auto . . .**

This insurance does not apply to:
* * *

(2) "Bodily injury" . . . arising out of any "auto" . . .

* * *

This exclusion applies to "bodily injury" . . . arising out of any . . . "auto" . . . , whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, entrustment, permitting, training or monitoring of others by an insured.

(Doc. No. 4-2 at 48.)  This exclusion had been amended sometime prior to the

incident in question; it previously provided as follows:

**g. . . . Auto . . .**

[This insurance does not apply to] "[b]odily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any. . .  "auto" . . . or operated by or rented or loaned to any insured.

The USF policy also included an assault and battery exclusion, as follows:

**X.  ASSAULT AND BATTERY EXCLUSION**

This insurance does not apply under COVERAGE A BODILY INJURY . . . arising from:

1.  Assault and Battery committed by any Insured, any employee of any Insured or any other person;

2.  The failure to suppress or prevent Assault and Battery by any person in 1. above;

3.   resulting from or allegedly related to the negligent hiring, supervision or

7

training of any employee of the Insured; or

4. Assault or Battery, whether or not caused by or arising out of negligent, reckless or wanton conduct of the Insured, the Insured's employees, patrons or other persons lawfully or otherwise on, at or near the premises owned or occupied by the Insured, or by any other person.

(*Id.* at 55.)  The policy did not define "assault" or "battery."

## ARGUMENTS OF THE PARTIES

USF first also argues that the plain language of the assault and battery exclusion bars coverage of Plaintiffs' claim because Decedent's injuries arose out of Lammert's assault and battery by hitting and running over Decedent with his (Lammert's) pickup truck.  USF points to the facts that the police charged Lammert with assault and that he later pleaded guilty to involuntary manslaughter by recklessness.  USF maintains that under the policy language as well as Missouri case law, the assault and battery exclusion applies to negligent (and reckless) acts, not just intentional ones.

Plaintiffs respond that this exclusion does not apply here because the uncontroverted facts do not show that Lammert intended to injure Decedent, and intent is an element of assault and battery, both as those terms are commonly understood and as they are legally defined.  Plaintiffs rely on the above-noted facts that Lammert told the investigating officers that he did not intend to hit and run over Decedent, that Lammert's passenger reported to the officers that Lammert repeatedly stated he did not intend to hit and run over Decedent, and Lammert's statement at his plea hearing that he thought Decedent was out of the vehicle's path when he hit him.  Plaintiffs argue that the conviction for involuntary manslaughter does not establish Lammert's intent to harm

Decedent, because reckless acts do not rise to the level of intentional acts. Thus, USF has not met its burden of proving that the policy's assault and battery exclusion applies.

In the alternative, Plaintiffs argue that the dangerous condition of Gannon's premises was a concurrent proximate cause of Decedent's injuries and that this cause is covered by the policy. Thus, according to Plaintiffs, under Missouri's concurrent cause doctrine, coverage is not barred by the assault and battery exclusion.

USF replies that the condition of Gannon's premises was not an independent proximate cause of Decedent's injuries, and thus Missouri's concurrent proximate cause doctrine does not apply. This is so, according to USF, because in the underlying litigation, Plaintiffs "did not claim the parking lot, standing alone, posed a danger, such as a pit fall or slippery surface. Thus, . . . absent an automobile [or Lammert's conduct], the premises presented no risk and no injury would have occurred." (*Id.* at 7.)

USF argues that the auto exclusion in the GCL policy also bars coverage, as the bodily injury involved clearly arose out of an auto – Lammert killed Decedent by striking him and running him over with his pickup truck. USF points to the fact that Plaintiffs recovered a settlement from Decedent's automobile liability insurer on this very basis. USF posits that the "whether or not" language of the amended auto exclusion means that the exclusion applies whether or not it was an insured party who operated the vehicle. USF reasons that adding the "whether or not" language would have had little purpose if it did not expand the exclusion's application in the way USF suggests – to also apply to autos operated by a party other than an insured party.

Plaintiffs respond that the auto exclusion is ambiguous, and permits a reasonable

reading of the "whether or not" language in the exclusion to modify the insured's relationship to the auto – that is, the exclusion applies whether or not the insured owned, or maintained, or used, or intrusted the vehicle to another, etc. They contend that the amendment does expand the exclusion, but not in the way USF suggests; rather it expands the scope of the insured's relationship to the auto by adding non-owned autos that are leased, hired, or borrowed by an insured. Thus, Plaintiffs argue, as Lammert was not an employee or agent of Gannon, the auto exclusion does not bar coverage for Plaintiffs' claims.

Plaintiffs posit that a layperson would not have understood the amended auto exclusion to bar coverage in any case involving any automobile whatsoever, even one operated by a third party with no connection to an insured. At the very least, Plaintiffs maintain, the auto exclusion is ambiguous in this regard, and therefore must be construed in their favor. Plaintiff notes that if USF intended the auto exclusion to apply to autos owned, or used, etc., by anyone, it could have so indicated by adding the words, "or any other person" at the end of the "whether or not" phrase, as it did in Part 4 of the assault and battery exclusion quoted above.

In opposition to USF's motion for summary judgment with respect to the claim of vexatious refusal to defend and indemnify Gannon against the premises liability claim, Plaintiffs maintain that a jury could find that had USF conducted a reasonable investigation into the incident, it would have discovered the evidence indicating that there had not been an assault and battery, but merely a negligent (or reckless) act on Lammert's part. They also argue that because their premises liability claim against Gannon was a

concurrent proximate cause of their injuries, USF could not rely on the assault and battery (or auto) exclusion in refusing to defend Gannon.

In reply, USF reaffirms its position that the assault and battery exclusion applies regardless of Lammert's intent, and thus USF had no duty to investigate this matter any further than it did. USF also argues that as Plaintiffs' assignment included only Gannon's claim for "bad faith," Plaintiffs cannot raise a vexatious refusal to pay claim.

## DISCUSSION

### Summary Judgment Standard and Applicable Law

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court is to construe all facts and make all reasonable inferences in favor of the nonmoving party. *Spritas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 671 (8th Cir. 2013). "Insurance disputes are particularly well suited for summary judgment because the proper construction of an insurance contract is always an issue of law for the court." *Chicago Ins. Co. v. City of Council Bluffs*, 713 F.3d 963, 969 (8th Cir. 2013) (citation omitted).

As the parties acknowledge, Missouri law applies to this case. The task of a federal court sitting in diversity is to attempt to predict how the forum state's highest court would resolve the issues. *Allstate Ins. Co. v. Blount,* 491 F.3d 903, 908 (8th Cir. 2007). Under Missouri law, the insured has the burden of proving coverage. *Am. Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir. 2006). Thus, "[t]o collect a judgment through equitable garnishment, the plaintiff has the burden to show by

11

substantial evidence that the claim is within the coverage provided within the insurance contract." *Heacker v. Safeco Ins. Co. of Am*., 676 F.3d 724, 727 (8th Cir. 2012) (applying Missouri law).

However, "[w]hen an insurance company relies on a policy exclusion to assert noncoverage, it has the burden of proving that such exclusion is applicable, and [a court is to] construe the exclusion clause strictly against the insurer." *Jensen v. Allstate Ins. Co*. 349 S.W.3d 369, 374-75 (Mo. Ct. App. 2011) (citation omitted); *see also Spirtas Co. v. Nautilus Ins. Co*., 715 F.3d 667, 671 (8th Cir. 2013).

In addition, "if the language of the policy is ambiguous and reasonably open to different constructions then the language will be interpreted against the insurer and in the manner that would ordinarily be understood by the lay person who bought and paid for the policy." *Pruitt v. Farmers Ins. Co.,* 950 S.W.2d 659, 664 (Mo. Ct. App. 1997) (citations omitted). "Whether or not the language of an insurance policy is ambiguous is a question of law. An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy." *Id.*

"The Supreme Court of Missouri has noted that courts may not 'create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate.'" *Doe Run Res. Corp. v. Lexington Ins. Co*., 719 F.3d 868, 875-76 (8th Cir. 2013) (quoting *Rodriguez v. Gen. Accident Ins. Co. of Am*., 808 S.W.2d 379, 382 (Mo. 1991)). Missouri courts are guided by the general principle that "[i]nsurance contracts are designed to furnish protection; as a result, where possible, we will interpret them to grant coverage rather

than defeat it." *Bowan v. Gen. Sec. Indem. Co. of Ariz.*, 174 S.W.3d 1, 5 (Mo. Ct. App. 2005).

Under Missouri law, "[a] liability insurer has two distinct duties, the duty to indemnify the insured for covered losses, and the duty to defend the insured in any lawsuit seeking damages that would be covered losses." *Trainwreck W., Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. Ct. App. 2007) (citations omitted). "The duty to defend arises when the insured is first sued and thus is understandably broader than the duty to indemnify." *Id.*

An insurance company "has a duty to defend an insured when the insured is exposed to *potential* liability based upon facts known at the outset of the case, no matter how unlikely it is that the insured will be found liable . . . ." *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005); *see also Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 189 n.4 (Mo. Ct. App. 2012) ("An insurer has a duty to defend . . . so long as the underlying suit alleges a claim that is potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be."); *Union Pac. R.R. Co. v. Am. Family Mut. Ins. Co.*, 987 S.W.2d 340, 345-46 (Mo. Ct. App. 1998) (holding that the duty to defend "exists without regard to the merits of any claim").

> An insurer who refuses to defend its insured on the basis that there is no coverage does so at its own risk, and therein loses the ability to control the defense on behalf of the insured, and the ability to assert defenses that the insured might have asserted on its own behalf. Such an insurer is then bound by a reasonable settlement that the insured may enter into in hopes of limiting its own liability pursuant to section 537.065, should the insurer's estimation of the lack of coverage turn out to be in error.

*Fostill Lake Builders, LLC v. Tudor Ins. Co.*, 338 S.W.3d 336, 344 (Mo. Ct. App. 2011)

(citations omitted); *see also Assurance Co. of Am. v. Secura Ins. Co.*, 384 S.W.3d 224, 233 (Mo. Ct. App. 2012). While any settlement under section 537.065 must be reasonable, "there is substantial evidence that the judgment is reasonable whenever the court accepting the settlement holds a trial and takes evidence on the issue of damages and there is no evidence of fraud or collusion." *Fostill Lake Builders, LLC*, 338 S.W.3d at 345. Here, USF does not argue that the amount of the state court judgment was unreasonable, or that there was fraud or collusion in connection thereto.

**Auto Exclusion**

The Court concludes that a somewhat close question is presented by the auto exclusion in the insurance policy, but that this exclusion does not bar coverage here. The Court agrees with Plaintiffs that a lay person might reasonably have understood this exclusion to apply only to autos somehow related to the insured, not to any auto in the universe. *See Essex Ins. Co. v. City of Bakersfield*, 65 Cal. Rptr. 3d 1, 9-11 (Cal. App. 5 Dist. 2007) (holding that an average layperson would not have understood auto exclusion that excluded coverage for injuries "arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any auto," to limit coverage in for injuries arising from automobile accidents where the insured had no connection to the automobiles involved).

Cases relied upon by USF are inapposite because they involve different phraseology. For example, in *Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance Co*., 49 Cal. Rptr. 2d 567 (Cal. Ct. App. 1996), an assault and battery exclusion ended with the phrase, an "assault shall not be deemed an accident, whether or

14

not committed by or at the direction of the insured."  The court concluded that "[t]he only common sense definition attributable to the phrase 'whether or not committed by or at the direction of the insured' is 'whether committed by or at the direction of the insured, or not committed by or at the direction of the insured.'"  *Id.* at 571 (citation omitted).

The present case is not a case with clear exclusionary language, such as *Allstate Ins. Co. v. Miller*, 732 F. Supp. 2d 1128 (D. Hawaii 2010), which involved an auto exclusion in a homeowner's liability policy stating:  "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer."  *Id.* at 1136. Similarly, in *United States Specialty Insurance Co. v. LeBeau, Inc.*, 847 F. Supp. 2d 500 (W.D.N.Y. 2012), relied upon by USF, the auto exclusion excluded "Bodily injury . . . arising out of the ownership, maintenance, use or entrustment to others of any auto"; there was no "by any insured" language in the exclusion.  In fact, the exclusion had been amended to "conspicuously" drop the reference to "any insured," a fact relied upon by the court.  *Id.* at 503, 505.

Here the auto exclusion can be interpreted as USF advocates, but it can also be interpreted as Plaintiffs urge.[3]  A layperson, especially one purchasing general liability insurance for a bar whose premises included a parking lot, could reasonably have thought that the auto exclusion only excluded coverage for injuries arising out of an auto somehow connected to the insured.  As noted above, under Missouri law, ambiguous

---

[3]  *See Lewis v. Jabbar*, 5 So. 3d 250, 8-9 (La. Ct. App. 2009), cited by Plaintiffs, for a decision by another court construing an identical "whether or not" auto exclusion as not applicable where the auto was not owned or being used with the insured's permission.

exclusionary language is to be interpreted against the insurer.

**Assault and Battery Exclusion**

The Court also concludes that when USF was asked to defend Gannon against the premises liability claim, the record did not establish that Lammert's hitting and running over Decedent with Lammert's vehicle constituted an assault and battery within the meaning of the policy. This is so because the record does not establish that Lammert's actions were intentional rather than just reckless. In Missouri, as in other jurisdictions, civil assault and battery include an element of intent. *See Phelps v. Bross,* 73 S.W.3d 651, 656 (Mo. Ct. App. 2002) ("The second element needed to prove [civil] assault is the defendant's conduct, indicating intent to cause offensive contact."); *Baltzell v. Van Buskirk,* 752 S.W.2d 902, 906 (Mo. Ct. App. 1988) ("A battery is an intentional tort which, by definition, is not a cause of action for negligence.").

The Court believes that Missouri courts would hold as a matter of law that an intended act is necessary for an assault or battery exclusion in a GCL policy to apply. *See Desrosiers v. Hudson Specialty Ins. Co.,* 438 F. App'x 629, 631 (9th Cir. 2011) (so holding under Oregon law); *Ranger Ins. Co. v. O'Connell*, No. 88-15149, 1990 WL 11873, at *2 (9th Cir. 1990) (so holding under Arizona law and citing cases from other jurisdictions); *Essex Ins. Co. v. RMJC, Inc*., 306 F. App'x 749, 752 (3d Cir. 2009) (holding that under Pennsylvania law, although the extent of the resulting injury need not be intended, an intentional act is required); *Kamaki Skiathos, Inc. v. Essex Ins. Co*., 396 F. Supp. 2d 624 (D. Md. 2005) (holding that under Maryland law, assault and battery exclusion applied where facts in underlying action indicating an intentional tort); *cf.*

*State Farm Fire & Cas. Co. v. Schroeder*, 951 S.W.2d 708, 709 (Mo. Ct. App. 1997)
(holding that reckless act of insured did not trigger policy exclusion for injuries with were
"expected or intended by any insured; or [were] the result of willful and malicious acts of
an insured").  USF refers in its briefs to Lammert's conduct as "malicious," but USF has
not met its burden of showing this.

  The cases cited by USF for the proposition that Missouri courts apply assault and
battery exclusions in GCL policies when there was just negligence and not intent are
inapposite.  In fact, *Trainwreck West, Inc.,* 235 S.W.3d 33, makes it clear that when
injuries have been sustained as the result of the insured's negligence, an assault and
battery exclusion would not apply.  *Id.* at 40-44 (holding that evidence established that
insured nightclub's bouncer committed an assault and battery when he pushed a patron
out of the nightclub and injured her).  In other cases cited by USF, there was no dispute
as to whether there had been an assault and battery; rather the dispute was whether
another cause, such as the insured's negligent hiring or failure to protect, was covered by
the policy.  *See, e.g.*, *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341 (Mo. Ct. App. 2000)
(action for bar's negligent failure to protect the victim of an intentional stabbing from
intoxicating patrons); *McAlister v. Scottsdale Ins. Co.*, No. 1:09CV118 SNLJ, 2010 WL
3842407 (E.D. Mo. Sept. 27, 2010).  Similarly, the policy language here requires an
assault and battery for the exclusion to apply.  As concluded above, USF has not met its
burden of showing that there was an assault and battery.

## USF's Duty to Defend and Duty to Indemnify

  The Court believes that here, in light of the above conclusions with regard to the

auto and assault and battery exclusions, there is no escaping the further conclusion that

USF had a duty to defend Gannon in the underlying premises liability action, even

though the theory of liability against Gannon was quite attenuated.  And, as stated above,

under Missouri law, USF's failure to defend Gannon precludes it from challenging the

state court judgment against Gannon, other than on the ground that the amount of

damages was unreasonable.  *See Columbia Cas. Co. v. HIAR Holding, L.L.C.*, ___

S.W.3d ___, 2013 WL 4080770, at *4, 9 (Mo. Aug. 13, 2013) (explaining that "when an

insurer is bound to protect its insured from liability, it is bound by the liability

determination in the litigation to which the insured is a party, so long as the insurer had

the opportunity to control and manage the litigation") (citing *Schmitz v. Great Am.*

*Assurance Co*., 337 S.W.3d 700, 709 (Mo. 2011)).  USF has not argued that the amount

of damages was unreasonable and this Court has no basis for holding that it was.  Nor has

USF suggested any fraud or collusion in connection with the state court judgment.

Accordingly, with respect to Count I of the complaint, Plaintiffs' motion for summary

judgment shall be granted and Defendant's motion shall be denied.

**Plaintiffs' Claim of Vexatious Refusal to Defend and Indemnify**

Under Missouri law, Missouri's vexatious refusal to pay statute establishes three

elements that a plaintiff must prove in order to prevail on such a claim: (1) the existence

of an insurance policy with the defendant, (2) the defendant's refusal to pay under the

policy, and (3) such refusal was "without reasonable cause or excuse."   Mo. Rev. Stat.

§ 375.420.  Upon a finding of vexatious refusal to pay, "the court or jury may, in addition

to the amount [due under the policy and interest thereon], allow the plaintiff damages not

to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee." *Id.*

"There may be no vexatious refusal where the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense." *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 108-10 (Mo. Ct. App. 2004). "The mere fact that a subsequent court decision is adverse to an insurance company's position is not sufficient reason for imposing the penalty." *Id.* Generally, the question of reasonableness in this context is a question of fact for the jury rather than a question of law for the court, but in a proper case, the question can be determined as a matter of law based upon undisputed facts. "This is so because a question of fact exists only when fair-minded people, exercising reasonable judgment, could reach different conclusions on the issue in controversy. Summary judgment has been found proper in other cases involving a vexatious-refusal-to-pay claim." *Id.* (citing *Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.*, 997 S.W.2d 510, 522-23 (Mo. Ct. App. 1999); *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 55 (Mo. Ct. App. 1998)).

Vexatious refusal claims have been recognized where, for example, unfavorable evidence is concealed, there is no explanation for the refusal to pay, there is an extended period of time with no activity after the insurer completed the investigation, the insurer refused to pay a portion of the claim that was uncontested, the insurer delayed significantly in contacting the insured and performed an inadequate investigation, or the insurer relied on an inadequate expert opinion. *Two Branch Marina, Inc. v. W. Heritage*

*Ins. Co.*, No. 4:07CV1017 CDP, 2008 WL 2952747, at *5 (E.D. Mo. July 28, 2008)

(collecting cases). In *DeWitt v. American Family Mutual Insurance Co.*, 667 S.W.2d

700 (Mo. 1984), cited by Plaintiffs, the Missouri Supreme Court found that evidence in

an action to collect insurance proceeds for a house destroyed by fire, including the

insurer's refusal and delay in paying mortgage holders despite the fact that any defense

available against the insured was not available against the mortgage holders, the

insurer's failure to return premiums paid, the inadequacy of the insurer's investigation of

the claim, and the explanation by the insurer that its refusal to pay was reasonable

because the insured's claim presented an open question of law as to her insurable interest

and substantial factual issues relevant to items allegedly contained in the dwelling on the

date of the loss, was sufficient for the jury to find vexatious refusal to pay. *Id.* at 710.

"[T]he purpose of allowing for vexatious-refusal penalties is to correct the evil of

an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of the

claim. *Watters*, 136 S.W. 3d at 110. As stated above, a close question was presented

with respect to the exclusions, especially in light of the police report. And the Court

concludes as a matter of law that the facts and circumstances, as set forth in the record in

this case, do not evidence such an arbitrary refusal on the part of USF. *See id.* (granting

the insurer summary judgment on vexatious refusal to pay claim); *Two Branch Marina*,

2008 WL 2952747, at *7 (same).[4]

_____

[4] To the extent the opinion testimony of George W. Smith, the broker who underwrote the subject policy, is admissible on this matter, the Court's decision is not changed upon consideration thereof, primarily because there is no suggestion that he ever conveyed to USF his opinion that the two exclusions in question did not bar coverage.

## CONCLUSION

This Court believes that Missouri's highest court would find (1) that neither the assault and battery exclusion nor the auto exclusion in the insurance policy in question applies to bar coverage of Plaintiffs' claims; (2) that Defendant had a duty to defend and indemnify its insured on the premises liability claim against the insured; and (3) that Defendant's refusal to defend and indemnify its insured was not without reasonable cause or excuse, under Missouri Revised Statute § 375.420.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **DENIED** with respect to Count I and **GRANTED** with respect to Count II. (Doc. No. 56.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion for partial summary judgment on Count I is **GRANTED**. (Doc. No. 59.)

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

A separate Judgment shall accompany this Memorandum and Order.


*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of September, 2013.